**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————————

RESCAP LIQUIDATING TRUST,                      14 Cv. 05315 (JGK)

                    Plaintiff,                 <u>OPINION AND ORDER</u>

          - against -

PHH MORTGAGE CORP.,

                    Defendant.

————————————————————————————

**JOHN G. KOELTL, District Judge:**

      Plaintiff ResCap Liquidating Trust ("ResCap"), the

successor to Residential Funding Corp., LLC ("RFC"), filed this

suit against PHH Mortgage Corp. ("PHH Mortgage") as an adversary

proceeding in the Bankruptcy Court for the Southern District of

New York.  The Amended Complaint alleges state law claims for

breach of contract and indemnification.  PHH Mortgage moves to

withdraw the bankruptcy reference and to transfer this case to

the United States District Court for the District of Minnesota.

The Court has jurisdiction pursuant to 28 U.S.C. § 1334.[1]  For

the reasons explained below, the defendant's motion is granted.

——————————————————

[1]    PHH Mortgage does not dispute that the Court has
jurisdiction under § 1334(b), which provides district courts
with jurisdiction over civil proceedings arising under title 11,
civil proceedings arising in cases under title 11, and civil
proceedings related to cases under title 11.  <u>See</u> <u>Residential</u>
<u>Funding Co. v. Greenpoint Mortg. Funding, Inc.</u> (<u>In re</u>
<u>Residential Capital Co.</u>), No. 14cv5452, slip op. at 7–10
(S.D.N.Y. Sept. 24, 2014).

**I.**

ResCap's First Amended Complaint alleges that PHH Mortgage sold over 3,500 mortgage loans to RFC with a combined original balance greater than $945 million.  (Am. Compl. ¶¶ 4, 17).  In the RFC-PHH Mortgage agreements, PHH mortgage made representations and warranties concerning the quality of the loans that it sold to RFC.  (See Markham Decl. Attach. 1, Ex. A, at 23, 26, 30, 32 (Mortgage Loan Flow Purchase, Sale & Servicing Agreement).)  These agreements also include a mandatory forum-selection clause:

> Each of the parties irrevocably submits to the jurisdiction of any state or federal court located in Hennepin County, Minnesota, over any action, suit or proceeding to enforce or defend any right under this Contract or otherwise arising from any loan sale or servicing relationship existing in connection with this Contract, and each of the parties irrevocably agrees that all claims in respect of any such action or proceeding may be heard or determined in such state or federal court. Each of the parties irrevocably waives the defense of an inconvenient forum to the maintenance of any such action or proceeding and any other substantive or procedural rights or remedies it may have with respect to the maintenance of any such action or proceeding in any such forum. . . .  Each of the parties further agrees not to institute any legal actions or proceedings against the other party . . . arising out of or relating to this Contract in any court other than as hereinabove specified in this paragraph 9.

(See Markham Decl. Attach. 1, Ex. A, at 3 (Client Contract).)

After purchasing the loans from PHH Mortgage, RFC pooled them into residential-mortgage backed securitization trusts

("RMBS trusts") or resold them to whole loan pools.  (Am. Compl.
¶¶ 21-22.)  When it resold and pooled the PHH Mortgage loans,
RFC made a number of representations concerning their quality,
for which it allegedly relied on PHH Mortgage's representations.
(Am. Compl. ¶ 38.)

Faced with numerous lawsuits because the loans in the RMBS
trusts and loan pools defaulted, on May 14, 2012, RFC and fifty
affiliated entities voluntarily filed petitions for relief under
Chapter 11 of the United States Bankruptcy Code.  (Am. Compl. ¶¶
58, 72.)  The RFC petitions were administered jointly before
Judge Glenn of the United States Bankruptcy Court for the
Southern District of New York.  PHH Mortgage filed a proof of
claim, requesting $167,759 for expenses incurred from servicing
twenty-nine loans on behalf of RFC.  (Proof of Claim No. 7173.)

Judge Glenn ultimately approved a global settlement
relating to RFC's RMBS trusts liabilities, and on December 11,
2013, Judge Glenn confirmed the Debtor's Second Amended Joint
Chapter 11 Plan (the "Plan").  In re Residential Capital, LLC,
No. 12br12020, Dkt. No. 6066 (Bankr. S.D.N.Y. Dec. 11, 2013).
The Plan preserved RFC's claims against the loan originators and
assigned them to ResCap.  In re Residential Capital, LLC, No.
12br12020, Dkt. No. 6065, slip op. at ¶¶ 24, 48 (Bankr. S.D.N.Y.
Dec. 11, 2013).

On December 13, 2013, ResCap filed a complaint against PHH Mortgage in the United States District Court for the District of Minnesota.  (Markham Decl. Attach. 1, Ex. A.)  The complaint was one of at least sixty filed in that District by ResCap against entities that had sold loans to RFC.  See Residential Funding Co. v. Cherry Creek Mortg. Co., No. 13cv3449, 2014 WL 1686516, at *1 (D. Minn. Apr. 29, 2014).  On February 28, 2014, ResCap voluntarily dismissed the complaint against PHH Mortgage in Minnesota, and on May 13, 2014, filed a complaint against PHH Mortgage in the Bankruptcy Court for the Southern District of New York.  The two complaints assert identical causes of action. (Compare Markham Decl. Attach. 1, Ex. A, with Original Compl.) At least seventy related actions remain pending in the Minnesota courts.  (September 11, 2014, Tr. at 27.)

On July 11, 2014, the defendant moved to withdraw the bankruptcy reference in this case pursuant to 28 U.S.C. § 157(d) and to transfer venue to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a). ResCap filed its First Amended Complaint on July 24, 2014.  This Court stayed the adjudication of the defendant's motion pending Judge Glenn's decision in Residential Funding Co. v. UBS Real Estate Securities, Inc. (In re Residential Capital, LLC), Case No. 12bk12020, Adv. No. 14-01926, 2014 WL 4180278 (Bankr. S.D.N.Y. Aug. 25, 2014).

4

## II.

### A.

In relevant part, § 157(d) provides that a "district court
may withdraw, in whole or in part, any case or proceeding
referred [to the bankruptcy court] on its own motion or on a
timely motion of any party, for cause shown."  To determine if
the petitioner has shown cause, the Second Circuit Court of
Appeals held that courts should consider "(1) whether the claim
is core or non-core, (2) what is the most efficient use of
judicial resources, (3) what is the delay and what are the costs
to the parties, (4) what will promote uniformity of bankruptcy
administration, (5) what will prevent forum shopping, and (6)
other related factors."  S. St. Seaport Ltd. P'ship v. Burger
Boys (In re Burger Boys, Inc.), 94 F.3d 755, 762 (2d Cir. 1996)
(citing Orion Pictures Corp. v. Showtime Networks, Inc. (In re
Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993)).

Under this framework, the threshold question was whether
the case involved a core or non-core proceeding, "since it is
upon this issue that questions of efficiency and uniformity will
turn."  Orion, 4 F.3d at 1101.  The Court of Appeals explained
that the core or non-core distinction was crucial because the
bankruptcy court's determination of non-core matters was subject
to de novo review by the district court.  Efficiency thus might
dictate a single proceeding in the district court.  For core

matters, the bankruptcy court could issue appropriate orders and judgments where factual findings would be subject to a more deferential standard of review, and efficiency might dictate that a bankruptcy court decide the case because of its greater familiarity with the facts and issues. Id. at 1100–02. Similarly, the Orion court held that the Constitution prohibits bankruptcy courts from holding jury trials in non-core proceedings, and therefore if there is a jury demand in a non-core proceeding, the district court might decide to withdraw the reference.  Id. at 1101–02.  After the Supreme Court's decision in Stern v. Marshall, 231 S. Ct. 2594 (2011), however, it is now clear that the level of review for some core proceedings must be de no novo and that a bankruptcy court can only make proposed findings of fact and conclusions in such proceedings.

ResCap argues that this adversary proceeding is a core proceeding because it involves the enforcement of the bankruptcy court's own orders, concerns the "administration of the estate," § 157(b)(2)(A), and is a counterclaim against PHH Mortgage's proof of claim.  § 157(b)(2)(C).

The first two arguments are without merit.  First, ResCap fails to explain how its complaint interacts with a prior bankruptcy court order, and the cases cited by ResCap stand for the modest principle that courts retain jurisdiction to enforce their own orders.  See, e.g., Baker v. Simpson, 613 F.3d 346,

6

352 (2d Cir. 2010) (per curiam) ("[A] bankruptcy court retains
post-confirmation jurisdiction to interpret and enforce its own
orders." (internal quotation marks omitted) (quoting Baker v.
Simpson, 413 B.R. 38, 43 (E.D.N.Y. 2009))).

Second, ResCap's argument that this is a core proceeding
because it concerns the administration of the bankruptcy estate
proves too much.  The dispute concerns pre-petition contracts,
which will be interpreted according to Minnesota law.  Orion
cautioned that "[a]ny contract action that the debtor would
pursue against a defendant presumably would be expected to inure
to the benefit of the debtor estate and thus 'concern[s]' its
'administration.'"  4 F.3d at 1102.  And although a counterclaim
based on a pre-petition contract occasionally may qualify as
core under § 157(b)(2)(A), see, e.g., U.S. Lines, Inc. v. Am.
S.S. Owners Mut. Prot. & Indem. Assocs., Inc. (In re US Lines,
Inc.), 197 F.3d 631, 637–38 (2d Cir. 1999), that is the
exception, not the rule.  See Orion, 4 F.3d at 1102.

ResCap nonetheless insists that this case is exceptional
because it will implicate various aspects of the Chapter 11
Plan.  It notes that the Plan involved multiple claims by
multiple creditors, that each claim in turn involved multiple
debtors, and that any damages paid by PHH Mortgage ultimately
must be allocated according to the Plan.  If PHH Mortgage is
found liable, the bankruptcy court would then have to distribute

the award according to the Plan's provisions.  But that does not mean resolving ResCap's claims—which involve a single plaintiff and a single defendant—would require such a determination.  If ResCap recovers damages, the award can be distributed by the bankruptcy court according to the Plan's provisions.

However, ResCap's third argument—that this matter is a core proceeding because it is a counterclaim against an entity that filed a proof of claim—is correct.  Section 157(b)(2)(C) includes among core proceedings: "counterclaims by the estate against persons filing claims against the estate."  In Stern, a creditor filed a proof of claim, alleging that the debtor defamed him.  The debtor then filed an unrelated counterclaim, asserting that the creditor had tortiously interfered with an expected gift.  231 S. Ct. at 2601.  The Supreme Court held that under the plain text of § 157(b)(2)(C), a counterclaim filed by a debtor in response to a proof of claim is a core proceeding, id. at 2604-05, even if the counterclaim is based on state law and is not related to a creditor's proof of claim.  Id. at 2602.

ResCap styled its Amended Complaint as a "counterclaim," and PHH Mortgage had filed its proof of claim before ResCap filed the Amended Complaint.  (Am. Compl. ¶ 15.)  ResCap's counterclaims are therefore "core proceedings" arising in a case under title 11 of the Bankruptcy Code.  See UBS Real Estate, 2014 WL 4180278, at *8-9.

**B.**

The counterclaims' core status does not end the § 157(d) inquiry.  The Supreme Court's decision in <u>Stern</u> has altered the rationale for this Circuit's § 157(d) balancing test.

Although the counterclaim in <u>Stern</u> was core, the Supreme Court held that the bankruptcy court nonetheless lacked the "constitutional authority to enter a final judgment" on the counterclaim because it was not "a matter of 'public right'" resolved in the "process of ruling on a creditor's proof of claim."  231 S. Ct. at 2611, 2620.

<u>Stern</u> did not establish a bright line test, 131 S. Ct. at 2621 (Scalia, J., concurring), but courts in this District have held that a bankruptcy court lacks constitutional authority to enter a final judgment in a core proceeding when: (1) the claim does "not fall within the public right exception"; (2) the claim "would not necessarily be resolved in ruling on a creditor's proof of claim"; and (3) the "parties did not unanimously consent to final adjudication by a non-Article III tribunal." <u>Weisfelnder v. Blavatnik (In re Lyondell Chem. Co.)</u>, 467 B.R. 712, 719-20 (S.D.N.Y. 2012); <u>see also</u> <u>Davis v. All Points Packaging & Distrib., Inc. (In re Quebecor World (USA))</u>, No. 12cv0888, 2012 WL 11088343, at *1 (S.D.N.Y. July 6, 2012).

Even though ResCap's counterclaims are a "statutory core proceeding," it is clear that the bankruptcy court lacks

constitutional authority to issue a final judgment on those counterclaims.  First, the counterclaims do not fall within the public-right exception because they arise "under state common law between two private parties."  Stern, 131 S. Ct. at 2614. Second, the bankruptcy court will not dispose of the counterclaims when it adjudicates PHH Mortgage's proof of claim. The proof of claim arises from post-petition contracts, while the counterclaims are based on unrelated pre-petition agreements.  (September 11, 2014, Tr. 6.)  Third, PHH Mortgage does not consent to adjudication of the counterclaims by the bankruptcy court.[2]  (Def.'s Br. at 4.)

In cases where a bankruptcy court cannot issue a final judgment in a core proceeding, courts in this District have modified the Orion test in one of two ways.  Rather than conducting the core/non-core determination, courts have considered whether the bankruptcy court "has constitutional authority to finally adjudicate the matter under Stern."  Dynegy Danskammer, L.L.C. v. Peabody Coaltrade Int'l Ltd., 905 F.Supp.2d 526, 529 (S.D.N.Y. 2012); see also Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.

---

[2]    ResCap asserts that PHH Mortgage consented to the adjudication of the counterclaims in the bankruptcy court by filing a proof of claim.  See, e.g., Pan Am. World Airways, Inc. v. Evergreen Int'l Airlines, Inc., 132 B.R. 4, 7 (S.D.N.Y. 1991).  Stern forecloses this argument.

Madoff), 486 B.R. 579, 582 n.1 (S.D.N.Y. 2013) ("[T]he majority of courts in this Circuit have determined that the primary Orion factor—whether or not a proceeding is core or non-core—has been supplanted."); Lyondell Chem., 467 B.R. at 719 ("[A] district court evaluating a motion to withdraw must first determine whether or not the bankruptcy court has constitutional authority to enter final judgment on the claim."). Other district courts have considered the bankruptcy court's authority to issue a final judgment in addition to the proceeding's core/non-core status and the other Orion factors. See, e.g., Messer v. Bentley Manhattan Inc., (In re Madison Bentley Assocs., LLC), 474 B.R. 430, 435 (S.D.N.Y. 2012); Walker, Truesdell, Roth & Assocs. v. Blackstone Grp., L.P. (In re Extended Stay, Inc.), 466 B.R. 188, 204 (S.D.N.Y. 2011).

It is unnecessary to determine whether the Stern inquiry replaces, or merely modifies, Orion's core/non-core inquiry in every case. Here, ResCap's contract counterclaims against PHH Mortgage qualify as statutory core proceedings solely because they were brought "by the estate" against a "person[] filing claims against the estate." § 157(b)(2)(C). For this prototypical Stern claim, the more significant inquiry is whether the bankruptcy court can issue a final judgment on ResCap's counterclaims, not whether the proceeding is core or not.

In Orion, the core/non-core inquiry was particularly important because the Court of Appeals reasoned that the bankruptcy court could issue a final order or judgment in a core proceeding but not in a non-core proceeding. Therefore, efficiency might be served by leaving a core proceeding in the bankruptcy court and reviewing any factual findings on a deferential standard. In this case, no such efficiency interest would be served because the bankruptcy court cannot enter a final order or judgment on the counterclaims. Even though the counterclaims are statutory core proceedings, Stern teaches that the bankruptcy court cannot issue a final order or judgment on such claims. Because the bankruptcy court's decision will be subject to de novo review, Exec. Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165, 2168, 2173 (2014), referring a "Stern claim" to the bankruptcy court may increase delay, waste judicial resources, and heighten the parties' costs. See Dynegy Danskammer, 905 F. Supp. 2d at 530.

Therefore, the counterclaims' core status in this case is accorded little weight under the Orion test. That the bankruptcy court cannot issue a final judgment on ResCap's counterclaims supports withdrawing the bankruptcy reference.

## c.

Although the threshold modified-Orion factor favors withdrawing the bankruptcy reference, the Court must also

12

consider whether withdrawal would affect the "efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." Orion, 4 F.3d at 1101. While the withdrawal and transfer inquiries are analytically distinct, that this proceeding would be transferred to the District Court for the District of Minnesota if withdrawn informs the Court's analysis. See ResCap Liquidating Trust v. CMG Mortg. (In re Residential Capital, LLC), No.14cv4950, 2014 WL 4652664, at *3 (S.D.N.Y. Sept. 10, 2014); ResCap Liquidating Trust v. Primary Capital Advisors, LLC (In re Residential Capital, LLC), No. 14cv5224, slip op. at 8-9 (S.D.N.Y. Sept. 16, 2014); Nw. Airlines v. City of Los Angeles (In re Nw. Airlines Corp., 384 B.R. 51, 59-60 (S.D.N.Y. 2008)

Leaving the counterclaims in the bankruptcy court would result in an inefficient use of judicial resources, risk delay, and increase the parties' costs. Because the adjudication of the counterclaims is subject to de novo review, withdrawing the counterclaims would prevent duplicative work. Judge Glenn is an expert on the claims asserted by RFC's creditors and on the reasonableness of the global settlement. But the "resolution of Residential Funding's claims against [PHH Mortgage] will ultimately depend on the loans that [PHH Mortgage] sold to Residential Funding." Cherry Creek Mortg., 2014 WL 1686516, at

13

*4; see also CMG Mortg., 2014 WL 4652664, at *2-3.  Nor do the
counterclaims involve complicated questions of bankruptcy law.
These are common law contract claims governed by Minnesota law,
a subject on which Minnesota courts have familiarity.  And the
courts in the District of Minnesota must eventually resolve at
least seventy actions involving contracts nearly identical to
the one here.  Therefore, discovery and pretrial management
presumably will be coordinated in that District.  Finally,
because this litigation is at an early stage, withdrawal will
not impose unnecessary costs on the parties or delay the
proceedings.

     Leaving the counterclaims in the bankruptcy court would not
promote uniformity.  "To evaluate whether a benefit to uniform
administration exists, courts look to the nature of the cause of
action.  Courts routinely have found no benefit where claims are
based on state law." Dynergy Danskammer, 905 F. Supp. 2d. at
533.  And withdrawing the reference would further intra-case
uniformity, because a vast majority of the related proceedings
are pending before courts in Minnesota.  See Lehman Bros.
Holdings Inc. v. Intel Corp. (In re Lehman Bros. Holdings Inc.),
No. 14cv293, 2014 WL 1877937, at *4 (S.D.N.Y. May 10, 2014).

     Keeping this case in the bankruptcy court also would
promote forum shopping.  ResCap initially filed its complaint in
the District of Minnesota, and after a change of heart,

                              14

voluntarily dismissed the complaint and then refiled it in the bankruptcy court in this District.  And, of course, the parties designated Minnesota as the only appropriate forum in their contracts.

Three judges in this District have found withdrawal of the reference appropriate in similar cases, although those cases did not involve a defendant that had filed a proof of claim and there was therefore no counterclaim issue.  See Primary Capital Advisors, slip op. at 8-9; CMG Mortg., 2014 WL 4652664, at *2-3; ResCap Liquidating Trust v. RBC Mortg. Co., No. 14cv4457, slip op. at 4-5 (S.D.N.Y. July 18, 2014).  Judge Castel recently concluded that a comparable case should remain in the bankruptcy court, see Residential Funding Co. v. Greenpoint Mortg. Funding, Inc. (In re Residential Capital Co.), No. 14cv5452, slip op. at 20 (S.D.N.Y. Sept. 24, 2014), but in that case the parties' contract designated New York as the proper forum, id. at 4-5. If the case had been withdrawn, Judge Castel—not a Minnesota district court—would have adjudicated the claims in the first instance.

For the foregoing reasons, the defendant's motion to withdraw the bankruptcy reference is **granted**.

### III.

PHH Mortgage moves to transfer this case to the District Court for the District of Minnesota pursuant to the parties'

forum-selection clause and the general change-of-venue statue,

28 U.S.C. § 1404(a).  Section 1412 of title 28 of the United

States Code also authorizes transfer of a case or proceeding

"under title 11" "in the interest of justice or for the

convenience of the parties."  The analysis under both statutes

is substantially the same.  Official Comm. of Asbestos Claimants

of G-I Holding, Inc. v. Heyman, 306 B.R. 746, 749 (S.D.N.Y.

2004) ("In determining whether to grant a motion for transfer

under § 1412, courts consider substantially the same factors as

for a motion to transfer under 28 U.S.C. § 1404(a)."); see also

Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In

re Manville Forest Prods. Corp.), 896 F.2d 1384, 1390–91 (2d

Cir. 1990) (considering the § 1404(a) factors in a § 1412 case).

     "When the parties have agreed to a valid forum-selection

clause, a district court should ordinarily transfer the case to

the forum specified in that clause."  Atl. Marine Constr. Co. v.

U.S. Dist. Court, 134 S. Ct. 568, 581 (2013).  Only under

"extraordinary circumstances" should a motion to transfer be

denied.  Id.; see also M/S Bremen v. Zapata Off-Shore Co., 407

U.S. 1, 15 (1972) ("[A] forum clause should control absent a

strong showing that it should be set aside.").  To determine if

transfer is appropriate, the Court must "consider arguments

about public-interest factors only" and "must deem the private-

interest factors to weigh entirely in favor of the preselected forum." Atl. Marine, 134 S. Ct. at 582.

ResCap correctly notes that there is a strong public interest in centralizing bankruptcy proceedings. See Mercury Masonry Corp. v. Terminal Constr. Corp. (In re Mercury Masonry Corp.), 114 B.R. 35, 39 (S.D.N.Y. 1990).  A number of courts in this District have held that when a proceeding is core, the public interest in centralizing bankruptcy proceedings always outweighs the public and private interests in enforcing a forum-selection clause, unless the core proceeding is inextricably intertwined with non-core matters.  See, e.g., Alsohaibi v. Arcapita Bank B.S.C.(c) (In Arcapita Bank B.S.C.(c)), 508 B.R. 814, 820 (S.D.N.Y. 2014); Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC), 285 B.R. 822, 837 (S.D.N.Y.2002); see also In re Exide Techs., 544 F.3d 196, 206 (3d Cir. 2008).  Other courts, within and outside this Circuit, have instead balanced the public interest in centralizing a particular core proceeding in a bankruptcy court against the parties' legitimate expectations and the interest of justice in enforcing a forum-selection clause.  See, e.g., Wachovia Bank Nat. Ass'n v. EnCap Golf Holdings, LLC, 690 F. Supp. 2d 311, 329-30 (S.D.N.Y. 2010); D.E. Frey Grp., Inc. v. FAS Holdings, Inc. (In re D.E. Frey Grp., Inc.), 387 B.R. 799, 805-06 (D. Colo. 2008); Envirolite Enters. v. Glastechnische

Industrie Peter Lisec Gesellschaft M.B.H., 53 B.R. 1007, 1012–13 (S.D.N.Y. 1985), aff'd sub nom., Envirolite v. Glastechnische Ind., 788 F.2d 5 (2d Cir. 1986); Manchester Inc. v. Lyle (In re Manchester, Inc.), 417 B.R. 377, 384–88 (Bankr. N.D. Tex. 2009).

For the claims at issue here—state law contract counterclaims that are not related to the creditor's proof of claim—a hard-and-fast rule against applying a forum-selection clause is inappropriate.  Courts in this Circuit endorsed a *per se* rule that forum section clauses do not apply to core proceedings when a counterclaim's core status turned on whether "there exist[ed] some connection between the claims of the creditor and those of the trustee."  Lombard-Wall Inc. v. N.Y.C. Hous. Dev. Corp. (In re Lombard-Wall Inc.), 48 B.R. 986, 990–91 (S.D.N.Y. 1985); see also Bankr. Servs., Inc. v. Ernst & Young (In re CBI Holding Co., Inc.), 529 F.3d 432, 464–65 (2d Cir. 2008) (finding counterclaims core because they "related to and arise out of the same transaction" as a proof of claim and resolving the proof of claim would dispose of the counterclaims).  There are strong arguments that such counterclaims should remain in the bankruptcy court.  But after Stern, all counterclaims—permissive or compulsory—qualify as core proceedings under the statute, even though the bankruptcy court could not enter a final judgment on all those claims. Here, ResCap's counterclaims are core proceedings solely because

18

PHH Mortgage filed a proof of claim, not because the counterclaims are closely intertwined with the claim allowance process or because they derive from the Bankruptcy Code.

Indeed, the Fifth Circuit Court of Appeals recently recognized that the relevant inquiry in deciding whether to enforce a forum selection clause is not whether a claim is a core proceeding or not, but instead whether the "core proceeding involves adjudication of federal bankruptcy rights wholly divorced from inherited contractual claims." Fire Eagle L.L.C. v. Bischoff (In re Spillman Dev. Grp., Ltd.), 710 F.3d 299, 306 (5th Cir. 2013) (internal quotation marks omitted) (quoting Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.), 118 F.3d 1056, 1068 (5th Cir. 1997)). And in an analogous context, the Second Circuit Court of Appeals cautioned that "even a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration. 'Certainly not all core bankruptcy proceedings are premised on provisions of the Code that inherently conflict with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code.'" U.S. Lines, 197 F.3d at 640 (internal quotation marks omitted) (quoting In re Nat'l Gypsum Co., 118 F.3d at, 1067)). Therefore, the public's

19

interest in keeping this case in the bankruptcy court is minimal.

The balance, thus, tips in favor of transfer.  The private-interest factors necessarily weigh in favor of the preselected forum.  The public interest in adjudicating this case in the bankruptcy court is slight because the counterclaims arise from pre-petition contracts, do not derive from the Bankruptcy Code, and are not intertwined with PHH Mortgage's proof of claim. Furthermore, the vast majority of ResCap's claims against the other loan originators are centralized in the District Court for the District of Minnesota, and transferring this case to that forum will ensure the case is resolved in an efficient manner.

For the foregoing reasons, the defendant's motion to transfer this case to the District Court for District of Minnesota is **granted.**

**CONCLUSION**

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed above, they are either moot or without merit.  The defendant's motion to withdraw the bankruptcy reference and transfer this case to the District Court for the District of Minnesota is **granted**.  The Clerk is directed to close **Docket Nos. 1 and 13**.  The Clerk also is requested to terminate all motions, effectuate the transfer

of this adversary proceeding to the United States District Court for the District of Minnesota, and close this case.

**SO ORDERED.**

Dated:     New York, New York
           October 9, 2014          _____/s/_____
                                          John G. Koeltl
                                    United States District Judge